appeal number 20-3253 and we'll hear first from Mr. Hennack and then from Mr. O'Neill. I see both counsel are at least visible. Mr. Hennack, go ahead. Thank you, Your Honor. And I do have the microphone unmuted. May it please the court. My name is Robert Hennack. I represent David Minnick on this appeal. The important thing to remember in this case is that word choice matters. Had Ms. Walker simply told her client that it was possible that the judge could impose an initial confinement term of 10 years or less, that would have been reasonable based on her limited experience of two years and I think it was one case in which someone was shot. But that's not what she did. She advised the client that it was likely that a sentence of 10 years initial confinement would be the maximum. This isn't a promise, but still telling a client that that is likely when there is no basis in either your experience or in common sense is unreasonable. What I would suggest in this case is that number one, the state court by applying a categorical approach saying that an attorney's advice regarding the possible sentence can never be a deficient performance. That is a clear contradiction to Strickland's requirement that you assess cases on a case-by-case basis to determine whether or not the attorney acted reasonably, which takes us to de novo. And then applying the applicable standards under McCann, under this court's decisions in Barnes and Moore, we look at number one, whether the advice is reasonable on its own and we know in this case that it's not. Mr. Hanna, if I could ask you, in hindsight, this estimate obviously looks pretty bad, but I was trying to see indications available to counsel before the sentencing given the very substantial mitigating factors that were available to Mr. McCann in this case. That should have made this just so far out of bounds that we would say that this satisfies the Strickland deficiency standard without using hindsight. Yes, without using hindsight, I would direct the court's attention to the decision by the circuit court by the sentencing judge at the time of the first post-conviction motion hearing where the judge went on for pages explaining why, in his view, it was unreasonable to believe that a 27-year sentence was not going to be likely in the case. I think those same factors... Well, okay, that's the judge justifying his sentence after the fact, but what should have been evident to counsel at the time she was giving this advice? Well, two things should have been evident to her. Number one is that with only two years of experience and only one other case that was at all comparable, she did not have the data set to be making what I think is referred to as a fallacy of hasty generalization to say not just that this is a possible sentence, but that is the likely sentence and that it is unlikely, therefore, that anything more than 10 years would be there or would be in the realm of likelihood. And I think that her lack of experience also goes to the issue that this court often refers to as good faith, which is that she did not do the background work. She did not have the experience in order to make this particular type of advice. Again, she could have said this was possible. The problem is that when you go beyond possible and assure your client that this is the likely sentence, that it is not likely that you are going to get more than 10 years when you do not have the research or the experience to be able to make that as a reasonable assertion. So I hope that answers the court's question. And also, this ties in specifically addressing the court's question. It ties into the second issue, which is that before sentencing, the attorney did know that at least the pre-sentence author was recommending 16 to 22 and a half years, which should have at least triggered a, I have to think about this, maybe I was not right in the first place. But she just barged right ahead and did not make, in my view, a good faith attempt to second-guess herself that a reasonable attorney would under the circumstances. Now, with regard to EDPA, obviously, with the first issue, deficient performance, the court applied a categorical approach, which I believe is inconsistent with Strickland's case-by-case approach, and takes us out of the EDPA deference area with regard to resulting prejudice. I think it's clear from the transcript of the post-conviction motion hearing that Mr. Minnick had a very good reason why he would want to withdraw his plea when he found out that the attorney's advice was unreasonable. Keep in mind— Does any Wisconsin authority treat this kind of situation as a fair and just reason to withdraw a plea? Well, I think that Jenkins and there was a second one that I cited that referred to the fact that confusion about the consequences of a plea based on misleading advice by the attorney can be a fair and just reason. So, yes, it is indirectly on point. That's my concern. With sentencing programs or provisions that give the sentencing judge very broad discretion, this kind of thing can happen all the time. And if either a PSR or an unexpectedly heavy sentence is enough to be able to withdraw, you really are inviting a lot of gamesmanship. Does Wisconsin have—maybe I should ask Judge Brennan this—but does Wisconsin have the equivalent of an 11C1C binding plea agreement option? Federal 11C1C? No. Very rarely does a judge ever indicate that if I do not follow the recommendations, you know, you can withdraw the plea. For the record, I agree with Mr. Hennick. It is one of the— Thank you both. I hope you continue doing that, Judge. I see that I'm down into my rebuttal time. If there are no other questions, I would ask to reserve the rest of my time. All right. Thank you very much, Mr. Hennick. Mr. O'Neill for the state. Thank you very much, Your Honor. Assistant Attorney General Aaron O'Neill on behalf of the warden, Dan Winkleski. Counsel here owed Mr. Minnick a good-faith assessment of his likely sentences if he accepted the state's plea agreement—excuse me, plea offer, and she gave him just that. She based her estimate on her experience as an attorney, her experience in Kenosha County, and her experience with the judge who handled the plea and sentencing in this case. She based it also reasonably on Mr. Minnick's positive attributes. He had no criminal record. He had a solid military career and a solid work history after he got out of the military. There was also a significant mitigating factor that she relied on, which was Mr. Minnick's diagnosis of post-traumatic stress disorder. And she also—and this is unquestioned—she never guaranteed him that he would receive any particular sentence. She told him repeatedly that the sentence was always going to be up to the court. And in addition, the record of the plea colloquy establishes that, I think, with respect to every charge, the circuit court judge asked Mr. Minnick if he understood he could get the maximum. So that is all unquestioned here. And finally, I note that counsel also didn't make her estimate based on any misinterpretation of any controlling law regarding potential maximum sentences or any collateral consequences regarding the plea. To prove that counsel was deficient, Mr. Minnick has to show that counsel's estimate was not made in good faith. But as I just argued, the record shows that it was. She didn't pick her estimate out of a hat. She based it on her experience and the facts of the case. Mr. O'Neill, I'd like to direct your attention to the effective assistance of counsel claim against Ms. Walker on the issue of not advising Mr. Minnick of his ability to withdraw his plea before the sentencing. The district court rejected that as abandoned by the government, that that claim had been procedurally defaulted, and then reviewed it in conjunction with this second IAC claim against Mr. Zell. Do you believe the district court was correct in the way it characterized that or incorrect? I'm sorry, I'm not entirely sure what you're referring to. The court found that we had abandoned the second claim regarding the plea withdrawal motion. My understanding is that the... I'm talking about the IAC claim against Ms. Walker for not advising Mr. Minnick of his ability to withdraw his plea before the sentencing. And then the district court here apparently reviewed that in conjunction with this IAC claim against Mr. Zell. And that actually wasn't one of the items included in the certificate of appealability. My question is, do you agree with this district court's characterization and handling of that or disagree with it? We agree with the district court's resolution of this. But I think the district court's resolution of it was based on how the claim was presented in state court. This claim was presented in state court through the guise of ineffective assistance of appellate counsel for not raising this claim of ineffective assistance of trial counsel. So our position is that those claims, they rise and fall together. Whether appellate counsel was ineffective for not pursuing this claim depends on whether trial counsel was not effective. But we're not conceding that trial counsel was ineffective for not advising Mr. Minnick of his right or his ability to seek a plea withdrawal before sentencing. Does that answer your question? It does. Thank you. Thank you. I'd like to... Mr. Minnick is making two claims really based on counsel's bad advice. One is that the counsel's estimate improperly induced his no contest pleas. And the other is that it was a basis for pre-sentencing plea withdrawal. On the former claim, I don't think that this court can resolve it. I think that claim on deficient performance, but it can also address prejudice. And prejudice in this situation means that Mr. Minnick has to show he would have gone to trial, but for counsel's estimate. There's a little bit of a wrinkle here in that Mr. Minnick is claiming that he not only would have gone to trial, but he would have pursued an insanity defense. I don't think there's much in the record that supports the idea that he really would have gone to trial on that insanity defense. Mr. Minnick has never explained why, if he really thought that this was a viable defense and one that he could prevail on at trial, why he was willing to take the plea agreement that the state offered. Which even with counsel's estimate of a 10 year sentence, still involved prison time. Why was that acceptable to him rather than going to trial and if successful at trial, avoiding prison time altogether? I'd also note that there's very little to suggest that that defense was actually a strong defense Mr. Minnick's experts, and there's nothing in the record to indicate that they ever actually reached a conclusion that he met the standard for Wisconsin's mental responsibility, that he wasn't mentally responsible for his crimes. Neither of his experts testified or put in the report that he met that standard. And on the other claim of ineffective assistance of fellow counsel regarding not raising trial counsel's ineffectiveness for not seeking pre-sentence plea withdrawal. I think this claim is most easily resolved on the prejudice prong of Strickland because a motion for pre-sentence plea withdrawal would have failed under Wisconsin law. Under Wisconsin law, a defendant has to show a fair and just reason to withdraw a plea. The law in Wisconsin is clear that remorse at entering a plea or a mere desire for trial is not enough to establish a fair and just reason. And there is, as Judge Hamilton noted, no case law that says a fear of a harsh sentence based on seeing the sentence recommendation in a pre-sentence investigation can establish a fair and just reason. Sure. Can I take you back to what I kind of think of as the core claim on the original advice about a likely sentence? And I guess my question is, there may be room for disagreement about how best to read the Wisconsin Appellate Court's decision. If the Wisconsin Appellate Court in fact adopted a categorical rule, as Mr. Minnick is arguing, against bad sentencing advice being ineffective assistance, do you agree that that would be a problem under Strickland? I think it would be, if the court adopted a categorical rule, which I don't believe it did, but if the court did adopt a categorical rule, it would, I think, conflict with Strickland's everything on a case-by-case basis. But I don't think that the Court of Appeals did that here. I think the Court of Appeals assessed Mr. Minnick's claim, looked at what he was arguing, and he was arguing more, as the district court pointed out in its decision, he was really arguing more in the Court of Appeals on his direct appeal that counsel had guaranteed him the sentence. The court looked at that, looked at what happened at the post-conviction evidentiary hearing and determined, no, all he had proven is his lawyer had given him a sentence estimate that didn't come to pass, and that is not deficient performance. But I don't think we can ignore the record of the post-conviction hearing that was before the Court of Appeals, which explains why counsel had given the estimate that she did. So I don't think the Court of Appeals here took a categorical approach. Unless there are any further questions, I would ask this court to affirm the district court's order denying habeas relief. Thank you. All right. Thank you very much, Mr. O'Neill. Mr. Hennick, a rebuttal? Thank you, Your Honor. Regarding the last point first, I think it's telling that the state Court of Appeals cited to the Provo case, which I think pretty clearly applies a categorical approach as authority for their position. I do agree with Mr. O'Neill that the fair and just reason argument that we are making has to be made in the purview of a ineffectiveness of post-conviction counsel, or what we call in Wisconsin post-conviction counsel, or appellate counsel, because it was not raised on the direct appeal. The Court of Appeals did say that that is forfeited or defaulted if you don't provide ineffectiveness of post-conviction counsel. So I do think that he's right. It has to be raised that way. The one other thing is that there's a big difference between a likely sentence and a defendant is going to go to trial. You don't say, well, I told him that it's possible you're going to be acquitted. That's all you need to know. The question for the lawyer is, is it likely that I can be acquitted at all? And that's what's important to the defendant, and my time is out. Thank you very much for the consideration. Our thanks to both counsel for the helpful arguments. With that, the case is taken under advisement.